UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                    Date:  December 16, 2024
Title:       Mandi Peterson v. Vivendi Ticketing US LLC

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE
AWARDS [47]; PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT [50]

        Before the Court are two related motions.  The first is Plaintiffs Mandi Peterson,
Scott Fitzgerald, Zachary Richmond, Tom Loughead, Mason Verderame, Katie
Jezierny, Rian Bodner, Christopher Aragon, and Candice Zinner's (collectively,
"Plaintiffs") Motion for Attorneys' Fees, Costs, Expenses, and Service Awards (the
"Fees Motion"), filed on September 12, 2024.  (Docket No. 47).  The second is
Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Settlement
Motion") filed on November 18, 2024.  (Docket No. 50).  No opposition or reply was
filed with respect to either motion.

        The Court has read and considered the Motions and held a hearing on **December
16**, **2024**.

        For the reasons discussed below, the Court rules as follows:

- The Settlement Motion is **GRANTED**.  The proposed settlement is fair,
  reasonable, and adequate to serve the interests of the class members.

- The Fees Motion is **GRANTED**.  The Court finds reasonable Class
  Counsel's request for (i) attorneys' fees in the amount of $812,500; (ii)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)               Date:  December 16, 2024
Title:      Mandi Peterson v. Vivendi Ticketing US LLC

reimbursement of litigation costs incurred in the amount of $16,889.13; and
(iii) service awards of $2,500 for each of the nine named Plaintiffs.

## I.   **BACKGROUND**

### A.   **Factual and Procedural Background**

On December 1, 2023, Plaintiffs filed a Consolidated Complaint against
Defendant Vivendi Ticketing US LLC.  (Docket No. 22).  Plaintiffs bring this class
action on behalf of all similarly situated individuals ("Class Members") whose
personal identifying information ("PII"), including names, addresses, and payment
card information, was compromised by an alleged data breach that Defendant
discovered in or around May 2023 (the "Data Security Incident").  (*Id*. ¶¶ 2–4).
Plaintiffs assert that Defendant learned that an unknown third party obtained
unauthorized access to its customer data between February 28, 2023, and July 2, 2023.
(*Id*. ¶ 4).  It was not until on or around September 6, 2023, that Defendant sent notice
of the Data Security Incident to approximately 324,910 individuals whose PII was
subject to unauthorized access.  (*Id*. ¶ 5).

Plaintiffs assert that Defendant's failure to timely notify Plaintiffs of the Data
Security Incident for five months left them particularly vulnerable to having their PII
misused.  (*Id*. ¶ 6).  Additionally, Plaintiffs assert that Defendant's failure to take
reasonable security measures and abide by best practices, industry standards and
federal or state laws regarding security of PII, left Defendant's customers vulnerable to
identity theft, financial loss, and other associated harms.  (*Id*. ¶ 11).

Less than a year before, in October 2022, Defendant had reported a similar
major data breach which affected over 400,000 individuals.  (*Id*. ¶ 13).  Given this
prior breach, Plaintiffs assert that the potential for improper disclosure of Plaintiffs' PII
was a known risk to Defendant and thus Defendant was on notice that failing to take
necessary steps to secure PII would create a dangerous situation.  (*Id*. ¶ 14).

Based on the forgoing, the Consolidated Complaint alleges the following claims
for relief on behalf of Plaintiffs and the punitive class:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                    Date:  December 16, 2024
Title:      Mandi Peterson v. Vivendi Ticketing US LLC

    (1)    Negligence;

    (2)    Breach of contract;

    (3)    Unjust enrichment/quasi-contract;

    (4)    Violation of the New York General Business Law, N.Y. Gen. Bus. Law § 349, *et seq*.;

    (5)    Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 I11. Comp. Stat. 505/1, *et seq*.;

    (6)    Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 I11. Comp. Stat. 510/2, *et seq*.;

    (7)    Violation of the Washington Consumer Protection Act, Wash. Rev. Code Ann., § 19.86.020, *et seq*.;

    (8)    Violation of the California Consumer Privacy Act, Cal. Civil Code § 1798.100, *et seq*.;

    (9)    Violation of the California Consumer Legal Remedies Act, Cal. Civil Code §1750, *et seq*.;

    (10)    Violation of the California Constitution's right to privacy (Cal. Const., art. I, § 1);

    (11)    Violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.903, *et seq*.;

    (12)    Violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01 *et seq*.; and

    (13)    Violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code §§ 4165.01 *et seq*.

(*Id.* ¶ 17).

    On March 11, 2024, the parties attended a formal mediation session before Robert A. Meyer, Esq., a JAMS mediator, and reached a settlement to resolve the action.  (Joint Declaration (Docket No. 47-2) ¶ 19).   On June 20, 2024, the Court

---

**CIVIL MINUTES—GENERAL**                                                    3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 23-7498-MWF (DFMx)                    Date:  December 16, 2024**
**Title:       Mandi Peterson v. Vivendi Ticketing US LLC**

entered an Order granting preliminary approval of the Class Action Settlement Agreement ("Settlement Agreement").   (Docket No. 42).

Following the Court's Order, the parties worked with the settlement administrator, Kroll Settlement Administration LLC ("Kroll"), to deliver notice to the 324,910 Class Members, including the 66,707 individuals in the California Settlement Sub-Class.  (Settlement Motion at 9).  Kroll sent the notices by email and post card and sent a reminder email on or about September 23, 2024.  (*Id.*).  Kroll believes that these notices reached over 99% of all Class Members.  (*Id.* 9–10).  Kroll received no objections to the settlement nor any requests to be excluded from the Settlement Agreement.  (*Id.* at 10).  Kroll reports that it received 12,936 timely claims.  (*Id.*).

### B.    The Settlement

The Settlement Agreement is attached to the Declaration of Mason A. Barney ("Barney Decl.") as Exhibit 1.  (Docket No. 39-2).  The Settlement Agreement contains the following key class definition, monetary relief, notice, and release provisions:

- "Settlement Class" or "Class Members" collectively includes the Settlement Class and the California Settlement Sub-Class.  (Settlement Agreement § II.B.)

  o The "Settlement Class" represented by Plaintiffs is defined as "all individuals in the United States whose information was accessed in the Data Security Incident and who received notice of the Data Security Incident from [Defendant]."  (*Id.*).

  o The "California Settlement Sub-Class" represented by Plaintiff Christopher Aragon is defined as "all individuals residing in California as of the Notice Date whose information was assessed in the Data Security Incident and who received notice of the Data Security Incident from [Defendant]."  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)              Date:  December 16, 2024
Title:      Mandi Peterson v. Vivendi Ticketing US LLC

- • "Settlement Fund" is the $3,250,000 settlement amount to be paid by Defendant from which Class Members' settlement awards, Class Counsel attorneys' fees, cost and expenses, Named Plaintiff service payments, and administrative costs will be paid.  (*Id.* § II.E.2).

- • The Settlement Fund will be used to pay Initial Cash Distributions of up to (1) $2,000 per Class Member for documented, ordinary and unreimbursed out-of-pocket expenses; (2) $5,000 per Class Member for extraordinary expenses; and (3) $100 per California Settlement Sub-Class Member for the California Statutory Award benefit.  (*Id.* § II.H.2). Additionally, Class Members may choose between (1) 36 months of three-bureau credit reporting, *or* (2) a cash payment equal to a *pro rata* distribution of the remainder of the Settlement Fund, up to $100 per person.  (*Id.*).

- • To the extent additional funds remain after calculating payment of the above distributions, a second cash distribution on a *pro rata* basis may be added to the payment to every claimant, so long as it will not be *de minimis*.  (*Id.*).

- • Defendant has agreed to implement the following security measures, to be fully implemented within 6 months from the Effective Date of the Settlement, the cost of which will be borne by Defendant separate from the Settlement Fund:

  - o (a) creation of a position responsible for information security with a person qualified for the position ("CISO"), who will be responsible for program(s) to protect the security of its customers' payment card data and PII, including Defendant's compliance with PCI DSS;

  - o (b) performance of a security assessment for the organization based on an established industry standard conducted at least annually by an independent third party;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                    Date:  December 16, 2024
Title:        Mandi Peterson v. Vivendi Ticketing US LLC

- o (c) a company-wide encryption policy that provides for encryption of customer payment card data to include encryption and tokenization of payment card data at rest and in movement;

- o (d) a firewall on all Defendant's U.S. websites;

- o (e) retention of an established third-party IT security vendor to conduct penetration testing at least twice a year;

- o (f) endpoint protection and anti-malware software or tools on all servers and employee laptops with monitoring, reporting, and alerts for malware;

- o (g) implementation of multi-factor authentication for employee access to corporate systems or other systems containing payment card data;

- o (h) training for all employees regarding safe cyber security practices, provided twice a year;

- o (i) encouraging personnel to report any concerns about Defendant's information security systems to the CISO or some other designated employee of the company; and

- o (j) reviewing and updating the company's data retention policy annually. (*Id.* § II.E.3).

- All Class Members will be given individual notice by being emailed the Class Notice, which is attached to the Settlement Agreement as Exhibit A. (*Id.* § II.J.2).  The Class Notice will provide a link to the Claim Form, which is attached to the Settlement Agreement as Exhibit C.  (*Id.*).  If any emails are returned as undeliverable, or the email addresses are otherwise unusable, or if Plaintiffs' Counsel and the Settlement Administrator agree that additional mailing notice is necessary, then the Settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                    Date:  December 16, 2024
Title:      Mandi Peterson v. Vivendi Ticketing US LLC

Administrator may provide notice to some class members by U.S. mail in substantially the form of the Class Notice.  (*Id.*).

- At least 65 days after the Notice Date, the Settlement Administrator will issue a reminder notice by email, in the form attached to the Settlement Agreement with appropriate edits showing that it is a reminder.  (*Id.*).

- The online Claim Form, which is attached to the Settlement Agreement as Exhibit C, will also be on the Settlement Website, along with the Long Form Notice, attached to the Settlement Agreement as Exhibit B.  (*Id.* § II.G).  The Settlement Agreement and Plaintiffs' eventual motions for attorneys' fees and expenses and final approval will also be on the Settlement Website.  (*Id.*).  Furthermore, a toll-free number and P.O. Box will be available to address inquiries.  (*Id.*).

- Class Members who wish to object to or opt-out of the Settlement Agreement must do so in writing and must submit their objections or opt-out request no later than sixty (60) days after the Notice Date.  (*Id.* §§ II.K, II.L).

- Upon entry of the Final Approval Order, the Class Members will be deemed to have fully and finally released Defendant.  (*Id.* § II.I). The "Released Claims," as defined in the Settlement Agreement, are limited to claims "arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act relating to the Data Security Incident[.]"  (*Id.* § II.A.6).  The Release shall not include the claims of Class Members who timely exclude themselves.  (*Id.*).

## II.  **DISCUSSION**

Plaintiffs now seek final approval of the Settlement Agreement.  (Settlement Motion at 9).  Plaintiffs also request attorneys' fees in the amount of $812,500,

---

**CIVIL MINUTES—GENERAL**                                                    7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                 Date:  December 16, 2024
Title:      Mandi Peterson v. Vivendi Ticketing US LLC

reimbursement of expenses in the amount of $16,889.13, and Service Award Payments of $2,500 to each of the Representative Plaintiffs.  (Fees Motion at 10).

**A.**    **Certification of the Class for Settlement Purposes**

Plaintiffs seek certification of a class for settlement purposes only.

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court explained the differences between approving a class for settlement and for litigation purposes:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.  But other specifications of the Rule — those designed to protect absentees by blocking unwarranted or overbroad class definitions — demand undiluted, even heightened, attention in the settlement context.  Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Id.* at 620.

As discussed above, the Settlement Class collectively includes (1) the Settlement Class represented by Plaintiffs defined as "all individuals in the United States whose information was accessed in the Data Security Incident and who received notice of the Data Security Incident from [Defendant]," and (2) the California Settlement Sub-Class defined as "all individuals residing in California as of the Notice Date whose information was assessed in the Data Security Incident and who received notice of the Data Security Incident from [Defendant]."  (Settlement Agreement § II.B).

Rule 23(a) requires the putative class to meet four threshold requirements: numerosity, commonality, typicality, and adequacy of representation.  *Id.*; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  In addition, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                    Date:  December 16, 2024
Title:      Mandi Peterson v. Vivendi Ticketing US LLC

proposed class must satisfy Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Considering these requirements, the Court concludes that class certification is appropriate.

## 1.      The Rule 23(a) Requirements Are Met for Purposes of Settlement

*First*, under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  The Settlement Class encompasses approximately 324,911 individuals, and the California Settlement Sub-Class includes approximately 66,707 people.  (Supplemental Declaration of Scott M. Fenwick ("Fenwick Decl.") ¶ 3).  This is more than enough to satisfy Rule 23(a)(1)'s numerosity requirement.

*Second*, Rule 23(a)(2) requires that the case present "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), clarified that, to demonstrate commonality, the putative class must show that their claims "depend upon a common contention . . . that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350.

That requirement is met here, as each Class Member seeks resolution of the same legal and factual issues, such as (1) whether Defendant's data security systems prior to and during the Data Security Incident complied with applicable federal and state laws and regulations; (2) whether Defendant was negligent in failing to properly secure and protect Plaintiffs' and the Class's PII; (3) whether Defendant was unjustly enriched by its actions; and (4) whether Plaintiffs and the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.  (*See* Consolidated Complaint ¶ 152)  The commonality requirement is therefore satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                Date:  December 16, 2024
Title:       Mandi Peterson v. Vivendi Ticketing US LLC

    ***Third***, Rule 23(a)(3) requires the putative class to show that "the claims or
defenses of the representative parties are typical of the claims or defenses of the class."
*Wal-Mart Stores, Inc.* 564 U.S. at 345.  The claims of the representative parties need
not be identical to those of the other putative class members; "[i]t is enough if their
situations share a 'common issue of law or fact,' and are 'sufficiently parallel to insure
a vigorous and full presentation of all claims for relief.'"  *Cal. Rural Legal Assistance,
Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (citations omitted).
Here, Plaintiffs allege that their PII was compromised and that they were impacted by
the same allegedly inadequate data security that harmed the rest of the Settlement
Class.  (Settlement Motion at 19).  Accordingly, the typicality requirement is satisfied.

    ***Fourth***, Rule 23(a)(4) requires the representative parties to "fairly and
adequately protect the interests of the class."  *Wal-Mart Stores, Inc.* 564 U.S. at 345.
"In making this determination, courts must consider two questions: '(1) do the named
plaintiffs and their counsel have any conflicts of interest with other class members and
(2) will the named plaintiffs and their counsel prosecute the action vigorously on
behalf of the class?'"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th
Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).
Additionally, "the honesty and credibility of a class representative is a relevant
consideration when performing the adequacy inquiry because an untrustworthy
plaintiff could reduce the likelihood of prevailing on the class claims."  *Harris v.
Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (citation omitted).

    As to the first prong, the Court perceives no obvious conflicts between Plaintiffs
and their counsel and the other Class Members.  Plaintiffs are not subject to any unique
defenses, have experienced the same injuries as the other Class Members, and seek
compensation from Defendant.  (Settlement Motion at 19–20).  As to the second prong,
Plaintiffs and Class Counsel have vigorously prosecuted this action, Class Counsel
have substantial experience litigating similar types of class actions, and there is no
reason to believe that Plaintiffs and Class Counsel would not vigorously pursue this
action on behalf of the Settlement Class.  The adequacy requirement is satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)          Date:  December 16, 2024
Title:      Mandi Peterson v. Vivendi Ticketing US LLC

The requirements imposed by Rule 23(a) are thus satisfied.  The Court next considers whether the additional requirements of Rule 23(b)(3) are met.

## 2.    The Requirements of Rule 23(b) (3) Are Met for Purposes of Settlement

Rule 23(b)(3) allows the Court to certify a class seeking class-wide monetary relief but only if the additional requirements of predominance and superiority are satisfied.  *See* Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (discussing relevance of "predominance" and "superiority" requirements of Rule 23(b)(3)).

*First*, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods*, 521 U.S. at 623.  It involves similar questions as the commonality analysis, but it "is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  Predominance should be found when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998) (internal citation omitted).

Here, Plaintiffs' claims depend on the common question of whether Defendant used reasonable data security measures to protect consumers' PII.  (Settlement Motion at 20).  A common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).  Since the question here can be resolved using the same evidence for all Class Members, a single adjudication is appropriate and thus, the predominance requirement is satisfied. *See id*.

*Second*, Rule 23(b)(3)'s superiority requirement is also met.  Rule 23(b)(3) sets out the following four factors that together indicate that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy":

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                Date:  December 16, 2024
Title:     Mandi Peterson v. Vivendi Ticketing US LLC

    (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  "The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted).

    When deciding whether to certify a settlement class, the fourth superiority factor need not be considered.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]").

    Here, the three relevant factors favor certifying the Settlement Class:

    Under the first factor, individual Class Members do not have a strong interest in prosecuting their individual claims.  Each Class Member's damages or financial detriment is relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant.  (Consolidated Complaint ¶ 157).  Thus, a class action is a more efficient means for each individual Member to pursue his or her claims.  *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").  Moreover, because the claims of all Class Members are virtually identical, individual suits would require duplicative efforts.  *See Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003) ("Here, no one member of the Class has an interest in controlling the prosecution of the action because the claims of all members of the Class are virtually identical.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                Date:  December 16, 2024
Title:        Mandi Peterson v. Vivendi Ticketing US LLC

With respect to the second factor, there does not appear to be any other litigation currently or previously pending by any Class Member concerning similar claims to those at issue in this action.

Finally, as to the third factor, it is desirable to concentrate litigation before this Court.  Defendant's principal place of business is in California.  (Consolidated Complaint ¶ 68), which supports litigation in this forum.  *See In re Anthem, In. Data Breach Litigation*, 327 F.R.D. 299, 316 (N.D. Cal. 2018) (holding that since Defendant conducted substantial business in California maintained several offices in the state, it was desirable to concentrate litigation in that forum).  Considering the presence of Defendant in California and the inclusion of a California sub-class, this Court is a proper forum for resolution of the action.  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 495 (C.D. Cal. 2006) ("[B]ecause plaintiffs have alleged an overarching fraudulent scheme and include a California sub-class, it is desirable to consolidate the claims in this forum.").

Accordingly, the Motion is **GRANTED** insofar as the class is **CERTIFIED** for purposes of settlement.

## B.    Final Approval of the Settlement Agreement

Before approving a class action settlement, Rule 23 requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                    Date:  December 16, 2024
Title:       Mandi Peterson v. Vivendi Ticketing US LLC

and quotation marks omitted) (applying the factors announced in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026). "The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, Nos. C–96–3008 DLJ, C–97–0203 DLJ, C–97–0425 DLJ, C–97–0457 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234, 1234 (9th Cir. 1998). "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

*First*, the Court is satisfied that the Agreement is not the product of collusion between the parties.  The Agreement is the outcome of all-day mediation session conducted under the direction of mutually agreed-upon mediator, Robert Meyers of JAMS, who has extensive experience mediating and managing multiparty and multifaceted cases.  (Settlement Motion at 12).  "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666–67 (E.D. Cal. 2008) (noting the parties' enlistment of "a prominent mediator with a specialty in [the subject of the litigation] to assist the negotiation of their settlement agreement" as an indicator of non-collusiveness).

Moreover, the proposed Class Counsel have substantial experience handling complex litigations and class actions across various practice areas, including data

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)              Date:  December 16, 2024
Title:       Mandi Peterson v. Vivendi Ticketing US LLC

breach class actions.  (Settlement Motion at 20); (*see also* Barney Decl. ¶¶ 12–13).
Counsel have worked on behalf of the punitive class since the Data Security Incident
was first announced, have evaluated the legal and factual disputes and therefore have
dedicated ample time and resources to the litigation.  (Settlement Motion at 20).
Counsel have also been appointed by courts to various leadership positions in class
actions and have achieved notable settlements for their clients and class members.
(Barney Decl. ¶ 12).  The arms-length nature of the negotiation resulting in the
Settlement Agreement and the recommendation of experienced class action counsel
support final approval.  *See Linney*, 1997 WL 450064, at *5.

       ***Second***, the Settlement Agreement treats Class Members equally, as required by
Rule 23(e)(2)(D).  In determining whether this factor weighs in favor of approval, the
Court considers whether the settlement "'improperly grant[s] preferential treatment to
class representatives or segments of the class.'"  *Hudson v. Libre Tech. Inc.*, CV 18-
1371-GPC (KSCx), 2020 WL 2467060, at *9 (S.D. Cal. May 13, 2020).  Here, the
Settlement Agreement does not improperly discriminate between any segments of the
Class Members, as all Class Members are entitled to the same relief.  (See Settlement
Agreement § II.H.2).  The additional $100 to which the California Subclass is entitled
to is simply a result of the difference in claims "that bear on the apportionment of
relief."  Fed. R. Civ. P. 23(e), Advisory Comm.'s Note (2018).

       ***Third***, consideration of the *Hanlon* factors dictates final approval of the
proposed settlement:

              1.      **Strength of Plaintiffs' Case, and Risk, Expense, Complexity,
                      and Likely Duration of Further Litigation**

       When assessing the strength of a plaintiff's case, a court does not reach "any
ultimate conclusions regarding the contested issues of fact and law that underlie the
merits of this litigation."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp.
1379, 1388 (D. Ariz. 1989).

       Plaintiffs acknowledge that, despite the strength of their case, this case, like all
data breach cases, is subject to extensive risk.  *See, e.g., Hammond v. The Bank of New*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| Case No. | CV 23-7498-MWF (DFMx) | Date: | December 16, 2024 |
|---|---|---|---|
| Title: | Mandi Peterson v. Vivendi Ticketing US LLC | | |

*York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *8 (S.D.N.Y. June 25, 2010) (collecting data breach cases that did not survive the pleading stage); *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). Moreover, this case involves a proposed class of approximately 324,910 individuals, a complicated and technical factual overlay, and a motivated defendant with substantial resources.

Accordingly, this factor weighs in favor of final settlement approval.

## 2.    Risk of Maintaining Class Action Status Through Trial

The case is still in the pleadings stage, and the parties have not yet briefed any class treatment in this case. However, because "Defendant will likely oppose certification if the case proceeds, Plaintiffs necessarily risk losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, CV 11-004060JAK (MANx), 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014).

Accordingly, this factor weighs in favor of final settlement approval.

## 3.    Amount Offered in the Settlement Agreement

The Court concludes the $3,250,000 offered in the Settlement Agreement is fair and reasonable. The amount is in line with or exceeds other settlements in cases involving data breaches of similar scope. *See Carter v. Vivendi Ticketing US LLC*, No. 22-cv-1981-CJC, 2023 WL 8153712 *2 (C.D. Cal. Oct. 30, 2023) (granting preliminary approval of a $3 million settlement for a data breach involving approximately 431,635 individuals). Each Class Member was eligible to make a claim for up to $2,000 in reimbursements for expenses and lost time, and up to $5,000 in reimbursements for extraordinary losses from identity theft, and California Subclass Members were entitled to an additional $100 as a statutory damages award. (Settlement Motion 25–26). Moreover, Plaintiffs presently anticipate that sufficient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                Date:  December 16, 2024
Title:      Mandi Peterson v. Vivendi Ticketing US LLC

money will remain in the settlement fund after payment of the above amounts to the participating Class Members, the attorneys' fees, the service awards, and the administrative costs, such that an additional pro rata payment may be sent to the participating Class Members.  (*See* Settlement Agreement § II.H.c.).

Additionally, the Settlement Agreement offers relief beyond monetary compensation.  Defendant has agreed to implement numerous security measures for a period of at least two years from the date of implementation, to be fully implemented within six months from the Effective Date of the Settlement.  (Settlement Agreement § II.E.3).  This non-monetary relief benefits all Class Members, which supports that the Settlement Agreement was substantially fair.  *See In re Anthem, Inc. Data Breach Litigation*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) (holding that a data breach settlement agreement that offered a similar plan of monetary distribution and required the defendant to make changes to its data security systems was evidence that the agreement was fair, adequate, and reasonable).

Accordingly, this factor weighs in favor of final settlement approval.

**4.    Extent of Discovery Completed and Stage of the Proceedings**

The parties conducted extensive informal discovery prior to reaching the Settlement Agreement.  (Barney Decl. ¶ 9).  Formal discovery is not necessary where the parties have "sufficient information to make an informed decision about the settlement."  *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Plaintiffs vigorously gathered all available information regarding the Data Security Incident, including publicly available documents concerning announcements and notice of the Incident and non-public information concerning the size and makeup of the Settlement Class and the circumstances that led to the Incident.  (*Id.*).  Plaintiffs also conducted research of other similar data breach settlements to compare with the instant Settlement Agreement and concluded that the settlement compares favorably.  (*Id.*).  Moreover, Defendant provided additional discovery to assist Plaintiffs in understanding the scope of the Data Security Incident and to confirm that all the remedial measures being undertaken are properly responsive.  (*Id.* ¶ 10).

CIVIL MINUTES—GENERAL                                        17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                Date:  December 16, 2024
Title:        Mandi Peterson v. Vivendi Ticketing US LLC

Accordingly, this factor weighs in favor of final settlement approval.

### 5.        Experience and Views of Counsel

As discussed in above, Counsel have substantial experience handling complex litigations and class actions across various practice areas, including data breach class actions.  (Barney Decl. ¶¶ 9, 12, Exs. 3–5).  Further, "Counsel endorse the Settlement without reservation." (Settlement Motion at 30).  Great weight is "accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation;" which supports approval of the settlement agreement.  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quotation marks and citation omitted).

Accordingly, this factor weighs in favor of final settlement approval.

### 6.        Reaction of Class Members to Settlement Agreement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm'cns Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528-29 (C.D. Cal. 2004); *see also Churchill Village LLC v. Gen. Elec*., 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent).  Here, as of the deadline to object or opt of the settlement on September 20, 2024, no Class Member has objected to the Settlement Agreement or requested to excluded.  (Fenwick Decl. ¶ 10).  Accordingly, this factor weighs in favor of final settlement approval.

Based on the foregoing, the Court concludes that the *Hanlon* factors supports final approval of the proposed settlement.

### C.      Final Appointment of Settlement Class Counsel

Plaintiffs seek appointment of (i) Mason Barney and Tyler Bean, Siri & Glimstad, LLP, (ii) Jason Rathod and Nicholas Migliaccio, Migliaccio & Rathod, LLP,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                Date:  December 16, 2024
Title:       Mandi Peterson v. Vivendi Ticketing US LLC

and (iii) Kenneth Grunfeld, Kopelowitz Ostrow P.A., as Class Counsel in this action. (Settlement Motion at 31).

Under Rule 23(g)(1)(B), "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class."  In making this determination, courts generally consider the following attributes: the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g) (1)(A)(i–iv).

The Court concludes that Counsel meet the requirements of Rule 23(g), as Counsel's firms have significant experience in similar class actions.  (*See* Barney Decl. ¶¶ 12-13, Ex. 1).  Moreover, Counsel expended meaningful effort in investigating the potential claims, seeking mediation of the claims, and ultimately securing a favorable settlement of the class.

Accordingly, the Settlement Motion is **GRANTED**, and the Settlement Agreement is **APPROVED**.  The Class is **CERTIFIED** for purposes of settlement only, and Counsel are **APPOINTED** as counsel for the Class.

## D.     Attorneys' Fees and Costs

In the Ninth Circuit, there are two primary methods to calculate attorneys' fees: the lodestar method and the percentage-of-recovery method.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949 (citation omitted).

"The lodestar method requires 'multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.'" *Id.* (citation omitted).  "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%." *Id.* (citation omitted).  However, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)              Date:  December 16, 2024
Title:       Mandi Peterson v. Vivendi Ticketing US LLC

indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

"The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases." *Martin v. Ameripride Services, Inc.*, No. 08-cv-440–MMA, 2011 WL 2313604, at *8 (S.D. Cal. June 9, 2011) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).  The choice of "the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Class Counsel seeks fees in the amount of $812,500, which represents 25% of the Settlement Fund.  (Fees Motion at 10).  Class Counsel is therefore seeking the benchmark award for attorneys' fees as recognized in this Circuit.  *See In re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 949; *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (noting that attorney's fee awards ordinarily range from 20–30% of the common fund).  The Court concludes this fee amount is reasonable and fair, particularly in light of the complex nature of the litigation and the quality of the result achieved by Counsel.  Participating Class Members will not only receive monetary benefits, but also intangible protection of future harm.  Moreover, as discussed further above, the per-person rate is in line with or greater than the rates approved in cases involving data breaches of similar scope.

The reasonableness of the amount is further supported by a loadstar crosscheck. Based on the Plaintiffs' Counsel's hourly rates, the current loadstar is $325,944.10. (Joint Declaration ¶ 16). The hourly rates sought by Class Counsel are between $239 and $240 for paralegals and staff, $413 and $878 for associates, and $878 and $1,100 for partners, which are consistent with the prevailing market for attorneys of comparable experience, reputation, and ability.  (*See id.*, Exs. 1–6).  Notably, the fee requested represents a 2.44 multiplier over the current lodestar of $325,944.10.  (Fees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-7498-MWF (DFMx)                    Date:  December 16, 2024
Title:        Mandi Peterson v. Vivendi Ticketing US LLC

Motion at 11).  The Court thus concludes the requested fee represents a reasonable
multiplier.  *See Gutierrez v. Amplify Energy Corp.*, CV 21-01628-DOC (JDEx), 2023
WL 3071198, at *6 (C.D. Cal. Apr. 24, 2023) ("In the Ninth Circuit, a multiplier
ranging from 1.0 to 4.0 is considered 'presumptively acceptable.'") (citation omitted);
*see also Vizcaino*, 290 F.3d at 1052–1054 (surveying multipliers in 23 class action
suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed
cases); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010)
(observing that "multipliers may range from 1.2 to 4 or even higher").

        Accordingly, the Fees Motion is **GRANTED** as to the attorneys' fees requested.

        **1.      Service Award**

        Plaintiffs seek nine service awards, each in the amount of $2,500.  (Fees Motion
at 29).  "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part
of a class action settlement.  *Staton*, 327 F.3d at 977.

        The Court concludes the amount requested is reasonable, as incentive awards
typically range between $2,000 and $10,000.  *See Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases); *see also Bravo v. Gale
Triangle, Inc.*, CV 16-03347-BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb.
16, 2017) ("Generally, in the Ninth Circuit, a $5,000 incentive award is presumed
reasonable.").

        **2.      Reimbursement of Litigation Expenses**

        Counsel seeks reimbursement of litigation expenses in the amount of
$16,889.13.  (Fees Motion at 29).  Attorneys may recover their reasonable expenses
that would typically be billed to paying clients in non-contingency matters.  *See Harris
v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

        Counsel provide a breakdown of the costs for which they seek reimbursement.
(Joint Decl., ¶ 18), Exs. 1–6).  The bulk of the costs relate to the mediation fee, filing
fees, and service fees.  (*See id.*).  Attorneys routinely bill clients for such expenses, and

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 23-7498-MWF (DFMx)**              **Date:  December 16, 2024**
**Title:**        Mandi Peterson v. Vivendi Ticketing US LLC

it is therefore appropriate to allow Counsel to recover these costs from the settlement
fund.

Additionally, in order to afford each Class Member an opportunity to object,
Class Counsel provided notice to Class Members regarding the amount of fees, costs,
and service awards they would be requesting.  (Settlement Motion at 18).  No
objections were filed by Class Members, and Defendant similarly does not oppose the
amount requested.  (*Id.*).

Accordingly, the Court concludes that Counsel's request for litigation expenses
is fair and reasonable.

## III.    **CONCLUSION**

The Motions are ruled upon as follows:

- The Settlement Motion is **GRANTED**.  The Settlement Agreement is
  **APPROVED**; the Class is **CERTIFIED** for purposes of settlement only;
  and Counsel are **APPOINTED** as Class Counsel.

- The Fees Motion is **GRANTED.**

The Court awards Counsel $812,500 in fees and $16,889.13 in costs.  The Court
also awards each of the nine named Plaintiffs service awards in the amount of $2,500.
Each of these awards shall be paid from the Settlement Fund and in accordance with
the proposed payment schedule delineated in the Settlement Agreement.

A separate judgment shall issue.

IT IS SO ORDERED.